**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    ROBERT-JOHN FOTI,                    No. C 09-4167 CRB

12              Plaintiff,              **ORDER GRANTING DEFENDANTS'
                                        MOTIONS TO DISMISS AND DENYING**
13       v.                             **PLAINTIFF'S MOTION TO RECUSE**

14    COUNTY OF MARIN et al.,

15              Defendants.
      _____/
16

17          Pro se Plaintiff Robert-John Foti brings this civil rights action against various Marin County

18    and Fairfax police officers, District Attorney Ed Berberian, and the County of Marin.  Now pending

19    before this Court are Defendants' Motions to Dismiss and Plaintiff's Motion To Recuse.  For the

20    reasons discussed below, the Court GRANTS Defendants' motions to dismiss and DENIES

21    Plaintiff's motion to recuse.  In addition, because the Court concludes that amending the complaint

22    would be futile, Plaintiff's claims are dismissed without leave to amend.

23                              **I. FACTUAL BACKGROUND**

24          At approximately 11pm on the night of December 7, 2007, Plaintiff Foti was riding his

25    bicycle in Forest Knolls, California.  Compl. at ¶ 22.  During the ride, the bicycle's light "blinked

26    out," and Foti stopped to repair it.  *Id.*  While stopped, Foti observed Deputy Sheriff Jason Swift

27    approaching and began to walk away. Id.  Swift ordered Foti to stop and informed Foti that he was

28    being detained "because [he] had no light, a Vehicle Code [] violation." *Id.*

United States District Court
For the Northern District of California

1   Swift then asked Foti to identify himself.  *Id.* Foti refused, telling Swift that he would not

2   speak to Swift or any other police officer without counsel present.  *Id.*  Thus began a lengthy

3   exchange between Swift and Foti in which Foti repeatedly refused to supply his name and Swift

4   repeatedly denied Foti's requests to leave.  Compl. at ¶¶ 22-33.  Foti eventually attempted to leave,

5   at which point Swift placed Foti in handcuffs. Compl. at ¶ 33.

6   After handcuffing Foti, Swift proceeded to search Foti and his belongings.  *Id.* at ¶ ¶ 33-42.

7   As this search was ongoing, Deputy Sheriff Rebecca Leonard, Sergeant William Hernandez, and

8   Fairfax police officer Andrew Lyssand arrived at the scene.  *Id.* at ¶ ¶ 43, 46.  According to the

9   Complaint, Hernandez and Leonard "did not stop Swift from doing what he was doing and aided

10  him."  ¶¶ 44, 46.  Lyssand, meanwhile, placed Foti "in some kind of hold that made [him] very

11  uncomfortable."  *Id.* at ¶ 49.  The officers also called various individuals whose names and phone

12  numbers were discovered during the search, in an effort to ascertain Foti's identity.  *Id.* at ¶¶ 45,

13  47.

14  After a "great deal of time had gone by" and in response to repeated questioning, Foti

15  relented and told the officers his name.  *Id.* at ¶ 50.

16  A subsequent background check revealed that there was an outstanding bench warrant for

17  Foti's arrest.[1]  *Id.* at ¶ ¶ at 50-51.  Upon learning of the existence of the warrant, the officers placed

18  Foti in one of their vehicles and transported him to the police station for processing.  *Id.* at ¶ 51.

19  Foti spent the next 14-16 hours in the county jail.  *Id.* at ¶ at 56.

20  Based on the above events, Foti filed the present action, in which he alleges several causes of

21  action arising under 42 U.S.C. §§ 1983 and 1985.  Those actions are:

22  (1)  a § 1983 claim against officers Swift, Leonard, Hernandez, Lyssand, and Sheriff Robert

23      Doyle for allegedly conducting an unlawful search and seizure, in violation  of Foti's Fourth

24      Amendment rights;

25  (2)  a § 1983 claim against the officers for allegedly infringing Foti's Fifth Amendment

26      rights by continuing to question him after he had invoked his rights to silence and to counsel;

27

28

---

[1]  Foti asserts that the bench warrant was later determined to be void.  ¶ at 52.

1    (3) a § 1983 claim against the County of Marin for "Fail[ing] to Educate, Train and/or

2    Supervise" the officers against "committing the violations and omissions made in this case" ;

3    (4) a § 1983 claim against the County of Marin for  "not having policy's [sic] in place to

4    protect against the violations and omissions made in this case."

5    (5) two § 1983 claims against District Attorney Ed Berberian for allegedly violating Foti's

6    constitutional rights by (a) obtaining the bench warrant that led to Foti's incarceration on the

7    night of December 7, 2007 without presenting an "oath or affirmation of probable cause" and

8    (b) "fail[ing] or refus[ing]" to provide Foti with notice of a hearing date in a criminal trial;

9    (6)  a § 1985 charge against all defendants for allegedly conspiring to deny Foti his

10    constitutional rights.

11 Now pending before this Court are Defendants' motions to dismiss these claims.

12 **II.  LEGAL STANDARD**

13    For a complaint to survive a motion to dismiss, the nonconclusory factual content of the

14 complaint (plus reasonable inferences from that content) must plausibly suggest a claim entitling the

15 plaintiff to relief. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

16    A claim has facial plausibility ... when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the

17    misconduct alleged. The plausibility standard is not akin to a probability requirement,
but it asks for more than a sheer possibility that a defendant has acted unlawfully.

18    Where a complaint pleads facts that are 'merely consistent with' a defendant's
liability, it stops short of the line between possibility and plausibility of entitlement to

19    relief.

20 *Id.* (quoting *Ashcroft v. Iqbal*,129 S.Ct. 1937, 1949 (2009)).

21    Where, as here, the plaintiff is a pro se litigant, the plaintiff's complaint is "to be liberally

22 construed" and, "however inartfully pleaded, must be held to less stringent standards than formal

23 pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks

24 and citations omitted).

25 **III.  DISCUSSION**

26 **A.**    **Section 1983 Claims Related to Foti's Arrest and Search on December 7, 2007**

27    The Defendant police officers and the County of Marin move to dismiss those claims that

28 arise from their arrest and search of Plaintiff Foti on the night of December 7, 2007.  Defendants

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   maintain that the facts alleged in Foti's complaint, even if true, fail to establish that the officers

2   deprived Foti of any constitutional rights. This Court agrees.

3                           **1.    Individual Officers**

4          To state a claim for damages under 42 U.S.C. § 1983, a plaintiff must allege facts that show

5   "(1) acts by the defendants (2) under color of state law (3) depriving them of federal rights,

6   privileges or immunities (4) causing them damage." *Shoshone-Bannock Tribes v. Fish & Game*

7   *Com'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994). Foti asserts that the officers deprived him of

8   rights protected by the Fourth Amendment by unlawfully arresting and searching him on the night of

9   December 7, 2007. He also maintains that the officers infringed his Fifth Amendment rights by

10  continuing to question him after he had invoked his rights to silence and to counsel. This Court

11  concludes that the facts alleged in the Complaint fail to state a plausible constitutional violation

12  under either theory.

13         As an initial matter, Foti's complaint makes only one factual allegation with regard to Sheriff

14  Robert Doyle. That allegation is that Doyle "held [himself] out to the public and to the Plaintiff as

15  [an] officer[] of the State-Government." Compl. at ¶ 7. This allegation is plainly insufficient to

16  support a § 1983 claim, or any other federal claim, against Doyle. Accordingly, the claims against

17  Doyle are dismissed.

18                          **a.    Fourth Amendment Claims**

19         Foti's Fourth Amendment-based claims against the other officers charged in this case are

20  likewise without sufficient factual support. In *Virginia v. Moore*, 128 S.Ct. 1598 (2008), the

21  Supreme Court held that "when an officer has probable cause to believe a person committed even a

22  minor crime in his presence, the . . . [resulting] arrest is constitutionally reasonable." *Id.* at 1604.

23  Moreover, an arrest  is constitutionally valid even if the offense for which the officer possessed

24  probable cause is not an arrestable one under state law. *See id.* at 1607 (holding that the custodial

25  arrest of a defendant for driving on suspended licence, a non-arrestable misdemeanor under Virginia

26  law, did not violate the Fourth Amendment).

27

28

4

**United States District Court**
For the Northern District of California

1     Based on the facts alleged in the Complaint, the officers had probable cause to believe that

2  Foti had committed not one, but two offenses.  As a result, his subsequent custodial arrest was

3  constitutionally reasonable.[2]  *See id.* at 1604.

4     Foti concedes in his complaint that he was riding his bicycle without a light, in violation of

5  California Vehicle Code § 21201(d).[3]  *See* Compl. ¶ 22.  He also states that Officer Swift

6  approached him as he stopped to fix the light and that Swift informed him that the reason he was

7  being detained was "because [he] had no light, a Vehicle Code [] violation."  *Id.*  Foti further

8  acknowledges that he was "handcuffed when at the time I had done nothing more than commit an

9  un-arrestable offense."  *Id.* at ¶ 59.  Foti's concessions, along with Swift's statement regarding his

10  reason for detaining Foti, support only one reasonable inference: when Swift first approached Foti

11  he had probable cause to believe that Foti had committed a violation of Cal. Vehicle Code §

12  210201(d).  Though, as Foti points out, the specific infraction was not an arrestable offense under

13  California law, *see* Cal. Vehicle Code § 40302, that fact does not render his subsequent arrest

14  unconstitutional.  *See Moore*, 128 S.Ct. at 1607; *see also People v. McKay*, 27 Cal. 4th 601, 605

15  (2002) ("We conclude, in accordance with United States Supreme Court precedent, that custodial

16  arrests for fine-only offenses do not violate the Fourth Amendment and that compliance with state

17  arrest procedures is not a component of the federal constitutional inquiry.").

18     Even if it did, however, Foti's claim that his arrest was unconstitutional would still fail.

19  Under California law, an individual who is stopped on account of a vehicle code violation must

20  "present his driver's license or other satisfactory evidence of his identity for examination."  Cal.

---

[2] An arrest occurs when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  *Florida v. Bostick*, 501 U.S. 429, 437 (1991).  An arrest occurred in this case, at the very latest, when Officer Swift placed Foti in handcuffs.

[3] Cal. Veh. Code §21201(d) provides:
A bicycle operated during darkness upon a highway, a sidewalk where bicycle operation is not prohibited by the local jurisdiction, or a bikeway, as defined in Section 890.4 of the Streets and Highways Code, shall be equipped with all of the following:
(1) A lamp emitting a white light that, while the bicycle is in motion, illuminates the highway, sidewalk, or bikeway in front of the bicyclist and is visible from a distance of 300 feet in front and from the sides of the bicycle.

Vehicle Code § 40302(a); *McKay*, 27 Cal. 4th at 607.  Unlike riding a bicycle without a light, refusing to present a driver's license or another satisfactory form of identification during a traffic stop *is* an arrestable offense under California law.  *See id.*

In this case, Foti does not dispute that he was unwillingly to provide identification.  To the contrary, he repeatedly avers that he refused to identify himself to the officers.  As a result of this refusal to present identification, the officers also possessed probable cause to arrest Foti for violating Cal. Vehicle Code § 40302(a), an offense that is an arrestable one under California law.

In short, Swift and the other officers had probable cause to believe Foti had committed two offenses, one arrestable under California law and one not.  Either of these offenses was sufficient to authorize his custodial arrest.

Foti also contends, albeit somewhat obliquely, that the officers violated his Fourth Amendment rights by taking him into custody in reliance on a warrant that was later adjudicated void.  This argument is mooted by the fact that the officers had probable cause to believe Foti had committed the two offenses described above.  For Fourth Amendment purposes, a custodial arrest is valid so long as probable cause exists for at least one criminal offense.  *See Moore*, 128 S.Ct. at 1604.  The offense for which probable cause exists need not be the offense cited by the arresting officer at the moment of the relevant arrest.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[An officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

In this case, the officers possessed probable cause to believe Foti had violated two California laws.  Either of those offenses authorized his custodial arrest, regardless of what justification the officers provided Foti at the scene.  *See Devenpeck*, 543 U.S. at 153.  Thus, the fact that officers informed Foti that they were arresting him pursuant to a bench warrant is irrelevant to his Fourth Amendment claim.

In sum, because the officers had probable cause to believe that Foti had committed multiple criminal offenses, their initial detention and subsequent custodial arrest of Foti did not violate the Fourth Amendment.

**United States District Court**
For the Northern District of California

1    Foti similarly fails to allege facts sufficient to support a claim that the officers' search of his

2    person and belongings violated his Fourth Amendment rights.  It is well-established law that, "when

3    making a lawful arrest, police may conduct a warrantless search of the area within the arrestee's

4    immediate control, that is, 'the area from within which he might gain possession of a weapon or

5    destructible evidence.'" *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1991) (citing *Chimel v.*

6    *California*, 395 U.S. 752, 763 (1969)).  A search incident to arrest is constitutional even if the

7    arrestee is handcuffed.  *See id.*

8    As discussed above, Foti's arrest was valid.  The officers were therefore authorized to

9    conduct a search of the area within Foti's immediate control, even while Foti was handcuffed.  *See*

10   *Turner*, 926 F.2d at 887.  According to the facts alleged in the Complaint, that is precisely what

11   occurred.  After Foti refused to provide identification, Swift placed him in handcuffs and, with the

12   "aid" of Officers Leonard, Hernandez, and Lyssand, began to search Foti's person and his

13   belongings.  Given that Foti was riding a bike at the time of his arrest, both his person and his

14   belongings were within his immediate area of control.  Compl. at ¶ 34; *see United States v.*

15   *Andersson*, 813 F.2d 1450, 1456 (9th Cir. 1987) (allowing search incident to arrest in a hotel room

16   that encompassed the whole room and a closed suitcase).  Thus, under the facts alleged in the

17   Complaint, the officers' warrantless search did not contravene Foti's Fourth Amendment rights.

18   In his final Fourth Amendment argument, Foti maintains that the officers conducted the

19   search in an unreasonable manner.  *See San Jose Charter of the Hells Angel Motorcycle Club v. City*

20   *of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) ("An officer's conduct in executing a search is

21   subject to the Fourth Amendment's mandate of reasonableness . . . .").  Specifically, Foti alleges that

22   the officers acted unreasonably by (1) handcuffing him during the search; (2) taking "a great deal of

23   time" to conduct the search; (3) calling his friends in an effort to ascertain his identity; and (4)

24   placing him in a "very uncomfortable" hold.

25   These allegations fail to make out a plausible claim that the officers conducted the search in

26   an unreasonable manner.  An officer may use "reasonable force" to detain a suspect during a search.

27   *See Muehler v. Mena*, 544 U.S. 93, 99 (2005).  Officer Swift only handcuffed Foti after Foti refused

28   to provide identification, asked if he could leave, and then began to walk away with his bicycle.  Foti

1   also states that he refused to consent to a search and informed the officers that he would not even

2   talk to them without an attorney present.  Under these circumstances, it was reasonable for Swift to

3   handcuff Foti while he performed a search incident to Foti's arrest.  *See Muehler*, 544 U.S. at 100

4   (affirming 2- to 3-hour detention in handcuffs of individual during a search of the individual's

5   home).

6        As to the duration of the search, Foti avers that the search ended after  he informed the

7   officers of his name.  The extended length of the search was therefore the direct result of Foti's

8   uncooperative and unlawful behavior and not due to unreasonable conduct on the part of the

9   arresting officers.  Foti's refusal to identify himself likewise renders the officers decision to

10  telephone Foti's friends a reasonable one.

11       Foti's allegation that Lyssand placed him in a "very uncomfortable" hold also fails to state a

12  Fourth Amendment violation.  Foti does not allege that the hold caused him pain or injury or that it

13  was sustained for any length of time.  Moreover, Foti's uncooperative behavior and admitted

14  attempts to flee indicate that some form of restraint was justified.  Given the lack of severity of the

15  alleged use of force and the officers' obvious need to restrain Foti, the allegations in the Complaint

16  fail to state a plausible claim that the amount of force Lyssand used was "greater than [was]

17  reasonable under the circumstances."  *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing

18  *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

19       In sum, Foti fails to allege a plausible claim that the officers violated his Fourth Amendment

20  rights on the night of December 7, 2007.  The facts alleged in the Complaint establish that the

21  officers had probable cause to arrest Foti for multiple offenses and were authorized to conduct a

22  warrantless search incident to arrest.  None of the facts alleged in the Complaint suggest plausibly

23  that the officers conducted that search in an objectively unreasonable manner.

24                          **b.      Fifth Amendment Claim**

25       Foti also alleges that the officers violated his Fifth Amendment right against Self-

26  Incrimination by continuing to ask him questions after he had invoked his rights to silence and to an

27  attorney.  He identifies only one statement that he made during the allegedly unlawful interrogation:

28  the revelation of his name.  Compl. at ¶ 51.

United States District Court
For the Northern District of California

1    In *Chavez v. Martinez*, 538 U.S. 760 (2003), the Supreme Court held, in a fractured opinion,

2    that coercive police questioning does not violate the Fifth Amendment unless the statements

3    obtained through that questioning are "used" in a criminal case.  *See id.* at 766 (Thomas, J., joined

4    by Rehnquist, C.J., O'Connor, J., and Scalia, J.); *id.* at 777-78 (Souter, J., joined by Breyer, J.); *see*

5    *also Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009).  Applying *Chavez*, the Ninth Circuit

6    recently held that a statement has been "used in a criminal case" if government officials relied on the

7    incriminating statement "to initiate or prove a criminal charge."  *Stoot*, 582 F.3d at 925 n.15.

8    Here, Foti fails to allege how the revelation of his name was used "to initiate or prove a

9    criminal charge."  *See id.*  He states only that "[a]s a direct and proximate cause of these acts, I spent

10    14 - 16 hours in confinement, [and] had to put up $500 to get out."  Compl. at ¶ 56.  Put simply,

11    there is no indication that criminal charges were filed against Foti as a result of his actions on

12    December 7, 2007 or that any statements Foti made to the officers on that night were used against

13    him.  Nor is clear how his self-identification could be used against him in a criminal proceeding.

14    *See Hiibel v. Sixth Judicial Dist. of Nev., Humboldt County*, 542 U.S. 177, 191 (2004) ("Answering

15    a request to disclose a name is likely to be so insignificant in the scheme of things as to be

16    incriminating only in unusual circumstances.").[4]  For these reasons, Foti's Fifth Amendment claim,

17    like his Fourth Amendment claims, fails to pass muster.

18    Because the alleged actions of officers Swift, Leonard, Hernandez, and Lyssand on the night

19    of December 7, 2007 did not violate Foti's Fourth or Fifth Amendment rights, Foti's § 1983 actions

20    against those officers are hereby dismissed.[5]

21                    **2.    County of Marin**

22    In addition to his allegations against the individual officers, Foti asserts two § 1983 claims

23    against the County of Marin: one for failing "to Educate, Train, and/or Supervise [its] agents" and

24

25        [4]  It is true that Foti's self-identification was used to connect him to the outstanding warrant.
26    But the criminal prosecution that resulted in the warrant was already ongoing, and Foti does not
     allege that his self-identification was used to prove the charges in that case.

27        [5]  Foti's allegation that the officers acted unlawfully because they had "no authority to
     enforce [the] vehicle code in unincorporated parts of a county" is frivolous.  *See* Cal. Penal Code §
28    830.1 (a)(1) (a deputy sheriff employed by a county has authority over any public offense committed
     or to which the deputy has probable cause to believe has been committed within that county).

**United States District Court**
For the Northern District of California

1   one for "not having policy's [sic] in place to protect against" the alleged constitutional violations

2   committed by the individual officers.

3       "To impose liability on a local governmental entity for failing to act to preserve

4   constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional

5   right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to

6   deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving

7   force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

8   (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  For the reasons discussed above, Foti

9   has failed to allege sufficient facts from which this Court could plausibly infer that he was deprived

10  of a constitutional right.  As a result, he also fails to state a valid § 1983 claim against the County.

11          **B.      Section 1983 Claim Against District Attorney Berberian**

12      Foti contends that District Attorney Berberian violated his constitutional rights in two ways.

13  First, according to Foti, Berberian obtained the bench warrant that led to his incarceration on the

14  night of December 7, 2007 without presenting an "oath or affirmation of probable cause," in

15  violation of the dictates of the Fourth Amendment.  Compl. at 15.  Second, Foti avers that Berberian

16  "failed or refused to notice [Foti]" of a hearing date in a 2006 criminal case.  *Id.*  It was Foti's failure

17  to appear at the improperly noticed hearing that resulted in the issuance of the relevant bench

18  warrant.

19      Foti's claim that Berberian violated his Fourth Amendment rights by not attaching an "oath

20  or affirmation of probable cause" to the application for a bench warrant fails for at least two reasons.

21  First, Foti's conclusory allegation that "the record . . . shows there was no affidavit of probable

22  cause regarding the warrant or application by the District Attorney" is not sufficient to support a

23  plausible claim that the warrant application did not comply with the Fourth Amendment.  Without

24  more specific information regarding what evidence in the "record" establishes that the warrant

25  application was invalid, it is implausible for this Court to infer that a warrant issued by a state court

26  was not in compliance with the Constitution.

27      Second, Berberian is entitled to absolute prosecutorial immunity for acts taken in the course

28  of procuring a bench warrant.  *See Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th

10

United States District Court
For the Northern District of California

1    Cir. 2010) (holding that "the act of procuring a bench warrant is one 'intimately associated with the

2    judicial phase of the criminal process'" and that, as a result, a "prosecutor who submits a motion for

3    a warrant" is "entitl[ed] . . . to absolute prosecutorial immunity from suit for civil rights claims

4    arising from the discharge of her duties.") (quoting *Imbler v. Pachtman*, 424 U.S. 409. 410 (1976)).

5    Thus, even if Foti had pled sufficient facts to support an inference that Berberian's warrant

6    application was invalid, his first claim against the district attorney would nonetheless be subject to

7    dismissal.

8         Foti's allegation that Berberian violated his constitutional rights by "fail[ing] or refus[ing] to

9    notice Plaintiff" of a hearing date in a 2006 criminal trial likewise fails to state a claim for relief

10   under § 1983. To state a claim under § 1983, the plaintiff must allege facts demonstrating that "acts

11   by the defendant" deprived the plaintiff of a protected right. *See Shoshone-Bannock Tribes*, 42 F.3d

12   at 1284. Even assuming that the failure to provide Foti with adequate notice deprived him of a right,

13   Foti has not supplied factual allegations that, if true, would demonstrate that acts by *Berberian*

14   deprived him of that right. Foti has not alleged, for example, that Berberian owed him a duty to

15   notify him of the upcoming date. Moreover, the August 28, 2006 Minutes of the Marin County

16   Municipal Court[6] clearly state that the "[Marin County] Clerk's Office [will] notify defendant of

17   future court appearance." A letter attached to the Minutes further reveals that the Court's Executive

18   Officer sent the promised notice to Foti, but used an incorrect address. These documents

19   demonstrate that the County Clerk's Office, not the District Attorney, bore the responsibility for

20   notifying Foti of the upcoming court date and that errors made by the Clerk's Office, not the District

21   Attorney, deprived him of the promised  notice.

22        In sum, neither of Foti's claims against Berberian state a cognizable cause of action under 42

23   U.S.C. § 1983. Accordingly, Foti § 1983 claims against District Attorney Berberian are dismissed.

24   **C.    Section 1985 Claims**

25        In his final claim for relief, Foti charges all Defendants with engaging in a "Conspiracy to

26   deny Rights protected," in violation of  42 U.S.C. § 1985. Foti does not identify which subsection of

27

28
_____

     [6] Pursuant to its authority under Federal Rule of Evidence 201, the Court takes judicial
notice of the Marin County Municipal Court's Minutes from August 28, 2006.

United States District Court
For the Northern District of California

§ 1985 his claim relies on.  However, "[b]ecause [he] does not assert any federal interest or involvement with the alleged conspiracy, [this Court] must conclude that his § 1985 claim[] [is] based upon the second clause of § 1985(2) or the first clause of § 1985(3)." *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985).  To state a claim under either of those two clauses, though, requires "an allegation of racial or class-based discrimination." *Id.*  Foti's complaint includes no such allegation and, for this reason, fails to state a claim under § 1985.

Even if Foti amended  his complaint to include an allegation of racial or class-based discrimination, his conspiracy claim would still fail for the simple reason that he has not plead any "nonconclusory factual allegation[s]" that give "rise to a plausible suggestion of a conspiracy" to deprive him of his constitutional rights. *Iqbal*, 129 S.Ct. at 1950.  As discussed above, the acts alleged in the Complaint, even if true, do not establish that the Defendants violated Foti's constitutional rights.  An agreement among the Defendants to commit those acts would therefore not qualify as an unlawful conspiracy.

For these reasons, the Court dismisses Foti's § 1985 claims against all parties.

**D.      Futility of Leave to Amend**

Though this Court ordinarily grants leave to amend, the Court concludes that amendment would be futile in this case.  Plaintiff's initial complaint contains a lengthy recitation of the events that transpired on the night of December 7, 2007. *See, e.g.,* Compl. at ¶¶ 22-61.  Notwithstanding this thorough recounting, Foti's complaint falls well short of stating a cognizable constitutional violation.  Moreover, certain allegations, such as Foti's concession that he was riding his bicycle at night without an appropriate light, actually serve to establish the constitutionality of the Defendants' actions.  Given that Foti's initial complaint is so clearly insufficient despite its length and apparent comprehensiveness, the Court sees no reason to grant leave to amend.

**IV.  FOTI'S MOTION FOR JUDGE BREYER TO CORRECT ORDER OR RECUSE HIMSELF FOR BIAS**

On March 8, 2010, Foti filed a Motion For Judge Breyer To Correct Order or Recuse Himself For Bias.  The Court denies the motion.

1  A judge "shall disqualify himself in any proceeding in which his impartiality might

2 reasonably be questioned." 28 U.S.C. § 455(a).  To support his allegation that this Court's

3 impartiality might reasonably be questioned in the current proceeding, Foti cites this Court's January

4 15, 2010 Order Granting [Defendant Beverly Wood's] Motion to Dismiss.  According to Foti, this

5 Court exhibited its impermissible bias in the Order by "disingenuously misquot[ing] one paragraph

6 of the complaint and ignor[ing] the rest of Plaintiff's facts" and by "quot[ing] an unpublished

7 decision." Mtn. For Recusal at 2.

8  Having reviewed its January 15, 2010 Order, the Court finds no evidence of bias or of "a

9 deep-seated and unequivocal antagonism that would render fair judgment impossible." *F.J.*

10 *Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1144-45 (9th Cir. 2001).

11 Accordingly, the motion to recuse is denied.

12 **V.  CONCLUSION**

13  For the reasons discussed above, the Court GRANTS Defendants County of Marin, District

14 Attorney Ed Berberian, Sheriff Jason Swift, Deputy Sheriff Rebecca Leonard, and Sergeant William

15 Hernandez's Motion to Dismiss.  The Court also GRANTS Defendant Andrew Lyssand's Motion to

16 Dismiss.  These motions are granted without leave to amend.

17  Plaintiff's Motion For Judge Breyer To Correct Order or Recuse Himself For Bias is

18 DENIED.

19  **IT IS SO ORDERED.**

20

21 Dated: March 12, 2010

22  CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

United States District Court
For the Northern District of California